**Exhibit A – Complaint, Summons, and Affidavits of Service**

## General Civil and Domestic Relations Case Filing Information Form

☒ Superior or ☐ State Court of ___Clayton_____ County

| For Clerk Use Only | | |
|---|---|---|
| Date Filed ___11/18/2019___ | Case Number | ___2019CV04352-10___ |
| MM-DD-YYYY | | |

**Plaintiff(s)**
Handsford Vincent

| Last | First | Middle L. | Suffix | Prefix |
|---|---|---|---|---|
| Last | First | Middle L. | Suffix | Prefix |
| Last | First | Middle L. | Suffix | Prefix |
| Last | First | Middle L. | Suffix | Prefix |

**Defendant(s)**
Clayton County Sheriff's Office

| Last Hill | First Victor | Middle L. | Suffix | Prefix |
|---|---|---|---|---|
| Last | First | Middle L. | Suffix | Prefix |
| Last | First | Middle L. | Suffix | Prefix |
| Last | First | Middle L. | Suffix | Prefix |

Plaintiff's Attorney ___Ashley Wilson Clark___     Bar Number ___771512___     Self-Represented ☐

### Check One Case Type in One Box

**General Civil Cases**
- ☐ Automobile Tort
- ☐ Civil Appeal
- ☐ Contract
- ☐ Garnishment
- ☐ General Tort
- ☐ Habeas Corpus
- ☐ Injunction/Mandamus/Other Writ
- ☐ Landlord/Tenant
- ☐ Medical Malpractice Tort
- ☐ Product Liability Tort
- ☐ Real Property
- ☐ Restraining Petition
- ☒ Other General Civil

**Domestic Relations Cases**
- ☐ Adoption
- ☐ Dissolution/Divorce/Separate Maintenance
- ☐ Family Violence Petition
- ☐ Paternity/Legitimation
- ☐ Support – IV-D
- ☐ Support – Private (non-IV-D)
- ☐ Other Domestic Relations

**Post-Judgment – Check One Case Type**
- ☐ Contempt
  - ☐ Non-payment of child support, medical support, or alimony
- ☐ Modification
- ☐ Other/Administrative

☐ Check if the action is related to another action(s) pending or previously pending in this court involving some or all of the same parties, subject matter, or factual issues. If so, provide a case number for each.

_____     _____
**Case Number**              **Case Number**

☒ I hereby certify that the documents in this filing, including attachments and exhibits, satisfy the requirements for redaction of personal or confidential information in O.C.G.A. § 9-11-7.1.

☐ Is an interpreter needed in this case? If so, provide the language(s) required. ___N/A___
**Language(s) Required**

☐ Do you or your client need any disability accommodations? If so, please describe the accommodation request.
N/A

Version 1.1.18

## SUPERIOR COURT OF CLAYTON COUNTY
## STATE OF GEORGIA

VINCENT HANDSFORD,                          )
                                            )
    Plaintiff,                          )
                                            )
    CIVIL ACTION
v.                                          )  File No.   2019CV04352-10
                                            )
CLAYTON COUNTY SHERIFF'S OFFICE,            )  **JURY TRIAL DEMANDED**
and Clayton County Sheriff VICTOR HILL,     )
in his official capacity,                   )
                                            )
    Defendants.                         )

## SUMMONS

TO THE ABOVE NAMED DEFENDANT(S):

Sheriff Victor Hill
9157 Tara Boulevard
Jonesboro, Georgia 30236

      You are hereby summoned and required to file with the Clerk of said Court and serve upon the Plaintiff's attorney, whose name and address is:

Ashley Wilson Clark
Buckley Beal LLP
600 Peachtree Street, NE
Suite 3900
Atlanta, Georgia 30308

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons, upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

                    Jacquline D. Wills
                    Clerk of Court
                    Superior Court Division

                    /s/ Anemkio Samuel
By_____
                    Deputy Clerk

## SUPERIOR COURT OF CLAYTON COUNTY
## STATE OF GEORGIA

VINCENT HANDSFORD,                      )
                                        )
    Plaintiff,                      )
                                        )    CIVIL ACTION
v.                                      )    File No.  2019CV04352-10
                                        )
CLAYTON COUNTY SHERIFF'S OFFICE,        )    **JURY TRIAL DEMANDED**
and Clayton County Sheriff VICTOR HILL, )
in his official capacity,               )
                                        )
    Defendants.                     )

## <u>SUMMONS</u>

TO THE ABOVE NAMED DEFENDANT(S):

Clayton County Sheriff's Office
9157 Tara Boulevard
Jonesboro, Georgia 30236

    You are hereby summoned and required to file with the Clerk of said Court and serve upon the Plaintiff's attorney, whose name and address is:

Ashley Wilson Clark
Buckley Beal LLP
600 Peachtree Street, NE
Suite 3900
Atlanta, Georgia 30308

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons, upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

Jacquline D. Wills
Clerk of Court
Superior Court Division

By_____/s/ Anemkio Samuel_____
    Deputy Clerk

2019CV04352-10 FILED
CLAYTON COUNTY, GA
11/15/2019 7:17 PM
Jacquline D. Wills
CLERK SUPERIOR COURT

## SUPERIOR COURT OF CLAYTON COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| VINCENT HANDSFORD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CIVIL ACTION |
| v. | ) File No.　2019CV04352-10 |
| | ) |
| CLAYTON COUNTY SHERIFF'S OFFICE, | ) **JURY TRIAL DEMANDED** |
| and Clayton County Sheriff VICTOR HILL, | ) |
| in his official capacity, | ) |
| | ) |
| Defendants. | ) |

### COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

Plaintiff Vincent Handsford ("Plaintiff" or "Mr. Handsford") files this Complaint for Damages and Equitable Relief against Defendants Clayton County Sheriff's Office ("CCSO") and Victor Hill in his official capacity as Clayton County Sheriff ("Hill") (collectively referred to as "Defendants"), showing the Court as follows:

### INTRODUCTION

1.

Mr. Handsford was formerly employed by CCSO between 2012 and 2019 as a law enforcement officer. Between November 2017 and October 2018, Defendants discriminated against Mr. Handsford on the basis of his disability by failing to promote him no fewer than five times in favor of less qualified employees, and subjected him to disparate discipline in an effort to prevent him from achieving a high rank in CCSO's leadership because of his disability.

2.

After Mr. Handsford filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on October 9, 2018, alleging discrimination under the ADA based upon his disability status, Defendants immediately began to retaliate against him. Defendants further retaliated against Mr. Handsford after he sought a reasonable accommodation for his disability in early April 2019. Defendants ultimately terminated Mr. Handsford on August 9, 2019, for pretextual reasons to retaliate against him for engaging in statutorily-protected conduct.

3.

Plaintiff asserts claims for discrimination and retaliation under the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794, which prohibits employers that receive federal funds from discrimination on the basis of disability. Plaintiff also asserts claims for discrimination on the basis of his disability and retaliation under the Americans with Disabilities Act Amendments Act of 2008, 42 U.S.C. § 12101 *et seq.* ("ADA").

4.

Mr. Handsford seeks back pay and lost economic benefits of his employment, front pay in lieu of reinstatement, compensatory damages, punitive damages, and his reasonable attorneys' fees and costs of litigation in an amount to be determined at trial.

## **JURISDICTION AND VENUE**

5.

This Court has jurisdiction over all of the parties to this lawsuit and all of the claims set forth in this Complaint.

6.

Venue is proper in this Court because Defendants reside in Clayton County.

## THE PARTIES

7.

Mr. Handsford is a resident of Henry County, Georgia. He subjects himself to the jurisdiction of this Court.

8.

Mr. Handsford is an individual with a disability as that term is defined under Section 504 of the Rehabilitation Act and the ADA.

9.

Specifically, Mr. Handsford is a person with a disability because he has an actual physical impairment, rheumatoid arthritis, a chronic inflammatory autoimmune disorder that substantially limits one or more of his major life activities, has a record of impairment, and/or was regarded by Defendants as a person with such impairments.

10.

At all relevant times, Mr. Handsford was a "qualified individual" with a disability because he was able to perform the essential functions of his job with or without a reasonable accommodation.

11.

Defendant CCSO is law enforcement agency of the state of Georgia and is subject to the jurisdiction of this Court. CCSO may be served with this Complaint and summons by serving

3

Sheriff Victor Hill at the Clayton County Sheriff's Office, 9157 Tara Boulevard, Jonesboro, Georgia 30236.

12.

Defendant Hill is a resident of Clayton County, Georgia, and is subject to the personal jurisdiction of this Court. Hill is sued in his official capacity as a constitutional officer. He may be personally served with this Complaint and summons at the Clayton County Sheriff's Office, 9157 Tara Boulevard, Jonesboro, Georgia 30236.

13.

At all relevant times, Defendant Hill acted in his official capacity as the Sheriff of Clayton County, a position that he has held in two terms, between 2005 and 2008, and again between 2013 to the present.

14.

Pursuant to his oath of office, Defendant Hill swore to uphold and enforce the Constitution and the laws of the United States and the State of Georgia within Clayton County.

15.

Defendant CCSO is a non-federal employer that receives federal funds for its programs and/or activities.

16.

At all relevant times, Defendant CCSO, together with Defendant Hill, was an "employer" for purposes of the ADA.

4

22.

In 2015, Mr. Handsford was diagnosed with rheumatoid arthritis, a bone disease that affects his major life activities and constitutes a disability under the Rehabilitation Act and the ADA. At all times relevant to this matter, Mr. Handsford has been able to perform the essential functions of his job.

23.

At all times relevant to this matter, Hill and CCSO's top leadership were all aware of Mr. Handsford's disability.

24.

Hill and CCSO learned of Mr. Handsford's disability in or around August 2016, when Mr. Handsford's rheumatoid arthritis worsened, which required him to undergo a full hip replacement. Mr. Handsford subsequently notified Defendants that he would likely need his other hip replaced at some point in the future.

25.

When Mr. Handsford returned to work following his hip replacement surgery in October 2016, Defendants began to subject him to discriminatory treatment on the basis of his disability, including treating him as though he is crippled.

26.

For example, despite Mr. Handsford's extensive experience in law enforcement, when he returned to work following his surgery, Defendants reassigned him to Court Services so that he would not "hurt himself," even though he did not require or seek any type of accommodation for his disability.

*Mr. Handsford Qualifies for Promotion...*
*But is Denied a Promotion Because of His Disability*
Case 1:19-cv-05746-JPB-RDB Document 1-1 Filed 12/20/19 Page 11 of 36

27.

Mr. Handsford tested for a promotion to Lieutenant in July 2017.

28.

Out of 60-70 test takers, Mr. Handsford was one of only four Sergeants who qualified to be considered for promotion to Lieutenant. Mr. Handsford's eligibility for promotion to Lieutenant began in August 2017.

29.

In his performance review for the evaluation period of June 30, 2017 to July 1, 2018, Mr. Handsford received a 47/50 ("Consistently Strong Performance"). He received 5/5 ("Outstanding Performance") in seven of the ten categories evaluated. He received 4/5 ("Exceeds Acceptable Performance") in three of the ten categories evaluated.

30.

Despite Mr. Handsford's qualification for promotion, he was passed over multiple times for promotion to Lieutenant between November 2017 and August 2018 because of his disability.

31.

Defendants repeatedly promoted to Lieutenant non-disabled Sergeants with lesser credentials and/or weaker performance evaluations than Mr. Handsford.

32.

On or about November 15, 2017, Defendants promoted Richard Moen (who is non-disabled) to Lieutenant, even though he was less qualified for the promotion than Mr. Handsford was.

7

33.

On or about December 16, 2017, Defendants promoted Eddie Cross (who is non-disabled) to Lieutenant, even though he was less qualified for the promotion than Mr. Handsford was.

34.

On or about April 21, 2018, Defendants promoted Shawn Johnson (who is non-disabled) to Lieutenant, even though Mr. Handsford had more experience as a Sergeant in the Department than Mr. Johnson did.

35.

On or about April 21, 2018, Defendants promoted Jonathan Manning (who is non-disabled) to Lieutenant, even though he was less qualified for the promotion than Mr. Handsford was, and one year had not passed since his last promotion, as required by CCSO policy.

36.

On or about August 15, 2018, Defendants promoted Sandy Manning (who is non-disabled) to Lieutenant, even though she was less qualified for the promotion than Mr. Handsford was.

37.

Mr. Handsford belongs to protected class of disabled individuals.

38.

Mr. Handsford was added to Defendants' list of Sergeants eligible for promotion to Lieutenant in August 2017.

39.

Despite Mr. Handsford's qualifications, Defendants passed over Mr. Handsford repeatedly and promoted less-qualified employees outside of his protected class.

40.

But for Mr. Handsford's disability Defendants would have promoted him to Lieutenant.

***Defendant Hill Demotes Mr. Handsford Four Ranks***

41.

On September 22, 2018, Mr. Handsford was on duty in the early morning hours when law enforcement officers from neighboring Henry County chased a suspect across county lines to Clayton County.

42.

Consistent with CCSO's policy, Mr. Handsford was monitoring one assigned dispatch radio channel that night, rather than "scanning" to monitor several radio channels.

43.

Clayton County emergency dispatch did not send out a call regarding the suspect that was being chased by Henry County law enforcement over the radio channel Mr. Handsford was monitoring that morning.

44.

Hill happened to be "scanning" the radio channels that morning, and learned about the incident before Mr. Handsford did.

9

45.

Mr. Handsford's alleged "failure" to timely notify Hill about the incident was deemed a violation of CCSO's Notification Policy, which requires the supervising Sergeant on duty to notify the Sheriff immediately when any significant incident occurs within the CCSO's jurisdiction.

46.

When Hill learned of the incident, he used profanity towards Mr. Handsford stating, "You're lucky I don't tell you to park my damn car and send your ass home."

47.

Later the same day (before a full investigation of the incident had occurred) Hill sent an email to all CCSO employees describing the incident for the purpose of singling Mr. Handsford out, threatening and humiliating him. Mr. Handsford was also placed on immediate administrative leave pending an investigation.

48.

Motivated by a discriminatory bias toward Mr. Handsford due to his disability, Hill and CCSO used Mr. Handsford's alleged infraction as an opportunity to remove him from CCSO's promotion list to assure that he could never again be considered for a promotion to a high level leadership position within CCSO, despite his being qualified for such a promotion.

49.

On October 4, 2018, Hill demoted Mr. Handsford four ranks, from Sergeant to a Correction Officer in the Clayton County jail, a position which was lower than any position that Mr. Handsford had previously held during his law enforcement career. Mr. Handsford had no

10

prior training in corrections before his demotion, and received no training for the position following his demotion.

50.

Although Hill routinely disciplines deputies with one-rank demotions, no other non-disabled deputy was subjected to a four-rank demotion for any type of infraction during Mr. Handsford's tenure at CCSO.

51.

Once Mr. Handsford's demotion was formalized, Hill sent an email to the entire office to inform other employees of the circumstances of Mr. Handsford's demotion in an effort to further humiliate him.

52.

In demoting Mr. Handsford four ranks for a single infraction, Defendants subjected him to discrimination by treating him less favorably than similarly-situated non-disabled employees.

53.

But for Mr. Handsford's disability Defendants would not have demoted him four ranks to a position as a Corrections Officer for a single infraction.

### *Mr. Handsford Files an EEOC Charge and Defendants Retaliate Against Him*

54.

On October 9, 2018, Mr. Handsford filed a Charge of Discrimination with the EEOC ("EEOC Charge"), alleging discrimination under the ADA based upon his disability status.

11

55.

Filing an EEOC Charge constitutes statutorily protected activity under the ADA. An employee who files an EEOC Charge against his employer is protected from retaliation under federal law.

56.

Within days of filing his EEOC Charge, Defendants began to retaliate against Mr. Handsford by subjecting him to materially adverse employment actions.

57.

With Defendants' approval, Mr. Handsford worked part-time as an off-duty private security officer using his CCSO-issued badge and gun beginning at time of his hire in 2012.

58.

Mr. Handsford earned a significant portion of his annual income from this type of part time off-duty security work.

59.

When Defendant Hill learned about Mr. Handsford's EEOC Charge, he retaliated against him on October 17, 2018, by taking Mr. Handsford's badge and gun, and revoked approval for Mr. Handsford to do part-time security work. As a result, Mr. Handsford began to lose a significant amount of income.

60.

When Mr. Handsford asked Assistant Chief Shawn Southerland why Defendants took these actions against him, he was informed that it was a direct order from Hill, and it was in Mr. Handsford's best interest not to question him.

61.

On October 23, 2018, Mr. Handsford attempted to submit an internal grievance against Hill for taking his gun and badge and refusing to allow him to do part-time security work, but he was informed that the grievance could not be accepted by CCSO unless Hill, who was the subject of the grievance, approved it.

62.

Beginning in early November 2018, Mr. Handsford began to request Defendants' approval to complete his Firearms Qualification with his CCSO service weapon in order to maintain his annual Law Enforcement Certification with the Georgia Peace Officer Standards and Training Council ("P.O.S.T.").

63.

Hill denied Mr. Handsford's request to further retaliate against him and to pressure him to resign his employment. As a result, on February 1, 2019, Mr. Handsford's P.O.S.T. certification was suspended after 18 years of active status.

64.

On January 16, 2019, Mr. Handsford was working in the Clayton County jail. He was informed by Lieutenant Bobby Pauls that Hill would no longer permit him to wear his uniform shirt, even though Mr. Handsford had worn a uniform shirt since his demotion the prior October.

65.

On January 17, 2019, Mr. Handsford was instructed to go to the Quartermaster to get a used shirt and to place black electrical tape over the name plate. When Mr. Handsford was not able to find a used shirt in his size, he informed Lieutenant Pauls and offered to have the patches

13

on his shirts removed and replaced with different ones the following day at his own expense. Hill rejected Mr. Handsford's suggestion.

66.

Hill sent Captain Peterkin to Mr. Handsford's work station, who then forced Mr. Handsford to remove the uniform shirt he was wearing, leaving him wearing only a t-shirt in a lobby in full view of citizens. Hill took this action against Mr. Handsford to further retaliate against him and humiliate him.

67.

The temperature in the area where Mr. Handsford worked was very cold. He explained to Captain Peterkin that he could easily become sick sitting in the cold temperature wearing only a t-shirt due to his disability.

68.

Mr. Handsford asked to be sent home, but Defendants forced him to sit through his shift all night in the cold temperature wearing only a t-shirt.

69.

On or about February 7, 2019, Defendants took steps to transfer Mr. Handsford from the desk in the Clayton County jail to the jail's medical ward, even though that assignment requires specialized training through Jailor School, which Mr. Handsford does not have.

70.

As a result of Defendants' unlawful discrimination and retaliation on the basis of Mr. Handsford's disability, he began to suffer from extreme anxiety, depression, and increased

14

physical pain from his rheumatoid arthritis, which resulted in Mr. Handsford taking medical leave from work beginning on February 8, 2019.

71.

Mr. Handsford amended his EEOC Charge on March 7, 2019, to assert a claim for retaliation after he engaged in protected conduct under the ADA.

72.

When Mr. Handsford returned to work on March 12, 2019, he was immediately removed from his position at the front desk at the Clayton County Jail, and transferred to the jail's medical ward at direction of Hill to retaliate against him for amending his EEOC Charge.

73.

Hill ordered Mr. Handsford's transfer to the jail's medical ward even though he knew that Mr. Handsford has not attended Jailor School and is not properly trained to interact with inmates, particularly those with medical and/or psychiatric conditions.

74.

Defendants transferred Mr. Handsford to the jail's medical ward knowing that he was not trained to work there, and with the expectation that he would make a mistake that Defendants could use as a pretextual basis for his termination.

75.

Because Mr. Handsford suffers from an autoimmune disorder, he was particularly vulnerable to contracting an illness in the medical ward, and on at least one occasion, was not able to receive necessary treatment for his disability because he had been exposed to sick inmates.

15

76.

Mr. Handsford had to work 14-15 hours per day in the jail's medical ward to compensate for the income he lost when Hill revoked approval for Mr. Handsford to do part-time security work.

77.

On April 11, 2019, Mr. Handsford was transferred to the jail's housing unit, despite his lack of training to work in that environment.

78.

Mr. Handsford complained repeatedly to his supervisors that he was not qualified to work in the jail, and expressed his belief that Hill was setting him up for a pretextual termination.

79.

Mr. Handsford also informed his supervisors that working in the jail had negative effects on his health due to his disability, and he requested a reasonable accommodation for his disability in the form of a reassignment to a position outside of the jail.

80.

At no point after Mr. Handsford expressed that working in the jail was having a negative impact on his health and requested an accommodation in the form of a reassignment did Defendants have an interactive discussion with Mr. Handsford about accommodating his disability.

81.

Requesting a reasonable accommodation for a disability constitutes statutorily protected activity under the Rehabilitation Act and the ADA. An employee who requests a reasonable accommodation for a disability is protected from retaliation under federal law.

82.

On April 14, 2019, Defendants instructed Mr. Handsford to sit in a room in the jail and do nothing for his entire eight-hour shift to retaliate against him for seeking a reasonable accommodation for his disability and engaging in other protected conduct.

83.

On April 18, 2019, Defendants continued to retaliate against Mr. Handsford by putting him on a five-day unpaid administrative leave after he was observed having a brief, collegial conversation with jail desk clerks.

84.

Mr. Handsford amended his EEOC Charge a second time on April 25, 2019, to assert additional claims for retaliation against Defendants.

85.

On May 23, 2019, Defendants placed Mr. Handsford on another administrative leave and ordered him to take a polygraph examination on May 29, 2019 (which he passed), after it was discovered that he had forwarded documents related to the allegations of his EEOC Charge from his CCSO email address to his personal email address.

17

86.

Several days prior to taking the polygraph, Defendants required Mr. Handsford to submit to an interview with CCSO's Internal Affairs Unit. During that interview, Mr. Handsford was specifically questioned regarding what documents he had provided to his attorneys to support his claims.

87.

Hill ordered Mr. Handsford to take the polygraph examination in a pretextual attempt to terminate him because Hill is aware that polygraph subjects frequently "fail" the examination, due to factors other than truthfulness.

### *Mr. Handsford is Terminated*
### *for Pretextual Reasons*

88.

In late June 2019, Mr. Handsford was transferred to road duty in the civil division of CCSO. He had no prior experience working in the civil division at CCSO or in any other previous law enforcement position he has held. Defendants did not provide Mr. Handsford with any training for his new position in the civil division.

89.

On August 2, 2019, Defendants placed Mr. Handsford on administrative leave pending an "investigation," without a legitimate basis.

90.

On August 6, 2019, Hill suddenly ordered Mr. Handsford to complete a medical "fitness for duty" examination, notwithstanding that Mr. Handsford had not requested an accommodation

18

for his disability at that time, and his ability to physically perform his job duties had never been called into question.

91.

Hill ordered Mr. Handsford to take an unnecessary fitness for duty examination as a pretext to terminate him because he believed that Mr. Handsford could not pass the examination due to his disability.

92.

Nevertheless, Mr. Handsford passed his fitness for duty examination on August 8, 2019.

93.

On August 9, 2019, Defendants terminated Mr. Handsford's employment.

94.

Captain Richard Moen informed Mr. Handsford of his termination, and explained that Hill "just wanted him separated from the Sheriff's Office."

95.

Mr. Handsford appealed his termination at a hearing on August 15, 2019.

96.

Mr. Handsford brought a witness to the appeal hearing to testify on his behalf regarding the false and pretextual allegations that Defendants had made against him to justify his termination.

97.

The hearing officer, Major Chris Storey, informed Mr. Handsford's witness, "There is no need for you to be here. Nothing you have to say will make any difference so you can leave."

19

98.

Mr. Handsford's appeal hearing was merely a rubber stamp for Defendants' pretextual and retaliatory termination decision.

99.

At the conclusion of the hearing, Major Storey turned off the device that had been used to record the hearing. He then issued Mr. Handsford a Criminal Trespass Warning which threatens Mr. Handsford with "arrest and/or prosecution" if he enter the premises of this Court or the Clayton County Sheriff's Office without scheduling an appointment with CCSO's Internal Affairs Unit in advance.

100.

A true and correct copy of the Criminal Trespass Warning that Defendants issued to Mr. Handsford on August 15, 2019, is attached hereto as Exhibit A.

101.

There was no factual or legal basis for Defendants to issue a Criminal Trespass Warning to Mr. Handsford.

102.

Defendants issued a Criminal Trespass Warning to Mr. Handsford to further retaliate against him and to implicitly threaten him against filing a lawsuit in this Court.

103.

Upon information and belief, after terminating Mr. Handsford, Defendants have continued to retaliate against him by interfering with his ability to obtain new employment.

104.

Defendants have subjected Mr. Handsford to disparate treatment on the basis of his disability; denied him a reasonable accommodation for his disability; subjected him to a discriminatory and retaliatory hostile work environment; and subjected him to numerous adverse employment actions for opposing unlawful employment practices, including, but not limited to: (1) revoking approval for Mr. Handsford to do part-time security work; (2) denying him approval to complete his Firearms Qualification to maintain his P.O.S.T. certification; (3) humiliating him by requiring him to put black tape over his name plate and forcing him to work in a cold temperature wearing only a t-shirt in the view of the public; (4) repeatedly transferring him to positions for which he is not qualified and not providing him with training for those positions, some of which negatively impacted his health and exacerbated his disability; (5) subjecting him to a condition which amounts to solitary confinement; (6) placing him on unpaid administrative leaves for pretextual reasons; (7) subjecting him to an unnecessary medical examination in an effort to exploit his disability for pretextual reasons; (8) terminating his employment for pretextual reasons; and (9) issuing him a Criminal Trespass Warning to implicitly threaten him against filing this lawsuit, all in violation of ADA.

105.

Mr. Handsford amended his EEOC Charge further on October 11, 2019 and November 7, 2019, to assert additional claims for retaliation. After Mr. Handsford received his Right to Sue from the Department of Justice on November 15, 2019, this suit followed.

21

## COUNT I

### DISCRIMINATION IN VIOLATION
### OF THE REHABILITATION ACT

106.

Plaintiff incorporates each and every preceding paragraph herein by reference as if forth fully herein.

107.

At all relevant times, Plaintiff was a qualified individual with a disability as that term is defined under the Rehabilitation Act, because he suffers from rheumatoid arthritis, a chronic inflammatory autoimmune disorder that substantially limits one or more of his major life activities, has a record of such impairments, and/or was regarded by Defendants as a person with such impairments.

108.

At all relevant times, Mr. Handsford was able to perform the essential functions of his job with or without an accommodation.

109.

Defendants intentionally discriminated against Plaintiff by subjecting him to adverse employment actions including, but not limited to, repeatedly denying him a promotion and demoting him four ranks, because of his disability.

110.

Defendants further discriminated against Mr. Handsford by refusing to grant him a reasonable accommodation for his disability in the form of a reassignment to a position outside of the Clayton County jail.

22

111.

The above-pled discriminatory conduct toward Plaintiff constitutes unlawful disability discrimination against Plaintiff in violation of the Rehabilitation Act.

112.

Defendants acted in bad faith, willfully and wantonly disregarded Plaintiff's rights under the Rehabilitation Act, and acted in reckless disregard for Plaintiff's rights under the Rehabilitation Act.

113.

As a direct and proximate result of Defendants' intentional discrimination, Plaintiff has suffered out of pocket losses and has been deprived of job-related economic benefits, including income in the form of wages and other benefits, all in an amount to be established at trial.

114.

Defendants' actions have caused and will continue to cause Plaintiff to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, all in an amount to be established at trial.

## **COUNT II**

### **DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**

115.

Plaintiff incorporates each and every preceding paragraph herein by reference as if set forth fully herein.

23

116.

Plaintiff is and, at all times relevant hereto, was a qualified individual with a disability as that term is defined under the ADA, 42 U.S.C. § 12102(1), because he suffers from rheumatoid arthritis, a chronic inflammatory autoimmune disorder that substantially limits one or more of his major life activities, has a record of such impairments, and/or was regarded by Defendants as a person with such impairments.

117.

At all relevant times, Mr. Handsford was able to perform the essential functions of his job with or without an accommodation.

118.

Defendants intentionally discriminated against Plaintiff by subjecting him to adverse employment actions including, but not limited to, repeatedly denying him a promotion and demoting him four ranks, because of his disability.

119.

Defendants further discriminated against Mr. Handsford by refusing to grant him a reasonable accommodation for his disability in the form of a reassignment to a position outside of the Clayton County jail.

120.

The above-pled discriminatory conduct toward Plaintiff constitutes unlawful disability discrimination against Plaintiff in violation of the ADA.

Criminal Trespass Warning to implicitly threaten him against filing this lawsuit, all in violation of ADA.

134.

The above-pled retaliatory conduct toward Plaintiff constitutes unlawful retaliation against him in violation of the ADA.

135.

Defendants acted in bad faith, willfully and wantonly disregarded Plaintiff's rights under the ADA, and acted in reckless disregard for Plaintiff's rights under the ADA.

136.

As a result of Defendants' retaliatory conduct, Plaintiff has suffered lost compensation and other benefits of employment, emotional distress, inconvenience, loss of income, humiliation, and other indignities.

137.

Pursuant to the ADA, Plaintiff is entitled to damages including, back pay and lost benefits, front pay in lieu of reinstatement, compensatory damages, punitive damages, his attorneys' fees and costs of litigation, and all other relief recoverable under the ADA.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands a **TRIAL BY JURY OF TWELVE** and prays that the Court:

(a)     Enter judgment in favor of Plaintiff and against Defendants;

(b)     Award Plaintiff economic and non-economic damages in an amount to be determined at trial;

28

(c)     Award Plaintiff his full back pay and other lost wages, taking into account all raises to which Plaintiff would have been entitled, and all fringe and pension benefits of employment, with prejudgment interest thereon;

(d)     Award Plaintiff front pay in lieu of reinstatement to compensate Plaintiff for lost future wages, economic benefits of employment, and pension benefits;

(e)     Award Plaintiff compensatory damages for emotional distress;

(f)     Award Plaintiff punitive damages for Defendants' willful violations of federal law;

(g)     Enter a declaratory judgment that Defendants engaged in unlawful employment practices in violation the Rehabilitation Act, 29 U.S.C. § 701, *et seq.* and its amendments, and the Americans with Disabilities Act Amendments Act of 2008, 42 U.S.C. § 12101 *et seq.*;

(h)     Award Plaintiff his reasonable attorneys' fees, expenses of litigation, and costs of this action;

(i)     Allow this case to be tried before a jury;

(j)     That process be served; and

(k)     Grant Plaintiff such other relief as it deems just and proper.

[SIGNATURE ON NEXT PAGE]

29

Respectfully submitted this 15th day of November, 2019.

**BUCKLEY BEAL, LLP**

*/s/ Ashley Wilson Clark*
Brian Sutherland
Georgia Bar No. 105408
bsutherland@buckleybeal.com
Ashley Wilson Clark
Georgia Bar No. 771512
awilsonclark@buckleybeal.com
Milinda Brown
Georgia Bar No. 363307
mbrown@buckleybeal.com

600 Peachtree Street, NE
Suite 3900
Atlanta, GA 30308
Telephone: (404) 781-1100
Facsimile: (404) 781-1101
*Counsel for Plaintiff*

2019CV04352-10  EFILED
CLAYTON COUNTY, GA
11/15/2019 7:17 PM
Jacquline D. Wills
CLERK SUPERIOR COURT

# EXHIBIT A



## Clayton County
# SHERIFF'S OFFICE

**Victor Hill**
Sheriff

# CRIMINAL TRESPASS WARNING

Vincent O. Handsford #22802

████████████████████████████

This is to confirm that you, Vincent O. Handsford, has received the following instructions from Major C. Storey #13078, who is an authorized representative of the Clayton County Sheriff's Office.

Vincent Handsford,
You are now forbidden from the premises of the Clayton County Sheriff's Office and the Clayton County Courthouse, located at 9151 and 9157 Tara Boulevard, Jonesboro, Georgia. You are subject to arrest and/or prosecution under O.C.G.A. 17-7-21 if you violate this warning.

If you have a legitimate reason to enter the property, on official business, you are to make contact with the Clayton County Sheriff's Office Internal Affairs Unit, and schedule an appointment with them in advance. The Internal Affairs Unit will assist you in accessing the building. This warning remains in effect unless officially withdrawn in writing by the Clayton County Sheriff's Office.

Refusal to sign does not invalidate this warning.

Warning Recipient's DOB: ████████████████

Warning Recipient: _Refused to Sign_____    Date: August 15, 2019
                    (Signature)

_____
(Printed Name)

Warning Issuer: _MAJOR_____ 13078    Date: August 15, 2019
                 (Signature)

_MAJOR CHRIS STOREY_
(Printed Name)

## General Civil and Domestic Relations Case Filing Information Form

☒ Superior or ☐ State Court of _____Clayton_____ County

**For Clerk Use Only**

Date Filed ___11/18/2019___
MM-DD-YYYY

Case Number ___2019CV04352-10___

**Plaintiff(s)**
Handsford' Vincent

| Last | First | Middle I. | Suffix | Prefix |
|------|-------|-----------|--------|--------|
| Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix |

**Defendant(s)**
Clayton County Sheriff's Office

| Last | First | Middle I. | Suffix | Prefix |
|------|-------|-----------|--------|--------|
| Hill | Victor | | | |
| Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix |

Plaintiff's Attorney ___Ashley Wilson Clark___    Bar Number ___771512___    Self-Represented ☐

### Check One Case Type in One Box

**General Civil Cases**
- ☐ Automobile Tort
- ☐ Civil Appeal
- ☐ Contract
- ☐ Garnishment
- ☐ General Tort
- ☐ Habeas Corpus
- ☐ Injunction/Mandamus/Other Writ
- ☐ Landlord/Tenant
- ☐ Medical Malpractice Tort
- ☐ Product Liability Tort
- ☐ Real Property
- ☐ Restraining Petition
- ☒ Other General Civil

**Domestic Relations Cases**
- ☐ Adoption
- ☐ Dissolution/Divorce/Separate Maintenance
- ☐ Family Violence Petition
- ☐ Paternity/Legitimation
- ☐ Support – IV-D
- ☐ Support – Private (non-IV-D)
- ☐ Other Domestic Relations

**Post-Judgment – Check One Case Type**
- ☐ Contempt
  - ☐ Non-payment of child support, medical support, or alimony
- ☐ Modification
- ☐ Other/Administrative

☐ Check if the action is related to another action(s) pending or previously pending in this court involving some or all of the same parties, subject matter, or factual issues. If so, provide a case number for each.

_____    _____
Case Number                 Case Number

☒ I hereby certify that the documents in this filing, including attachments and exhibits, satisfy the requirements for redaction of personal or confidential information in O.C.G.A. § 9-11-7.1.

☐ Is an interpreter needed in this case? If so, provide the language(s) required. ___N/A___
Language(s) Required

☐ Do you or your client need any disability accommodations? If so, please describe the accommodation request.
N/A
_____
_____

Version 1.1.18

2019CV04352-10
CLAYTON COUNTY, GA
11/22/2019 3:07 PM
Jacquline D. Wills
CLERK SUPERIOR COURT

## IN THE SUPERIOR COURT OF CLAYTON COUNTY
## STATE OF GEORGIA

**VINCENT HANDSFORD**

        Plaintiff(s),

vs.

**Case No.: 2019CV04352-10**

**AFFIDAVIT OF SERVICE**

**CLAYTON COUNTY SHERIFF'S OFFICE, AND
CLAYTON COUNTY SHERIFF VICTOR HILL, IN HIS
OFFICIAL CAPACITY**

        Defendant(s).

_____/

Personally appeared before me, the undersigned officer duly authorized to administer oaths, Anthonio Hightower, who, first being duly sworn, on oath deposes and states that he/she is a citizen of the United States and is 18 years of age or older and is a party having no interest in the above-styled case. Affiant further states that on **November 20, 2019** at **11:08 AM**, I served **SHERIFF VICTOR HILL** by personally serving **ALAN PARKER, Attorney/Counsel**, located at **9157 TARA BLVD , Jonesboro, GA 30236** with the following: SUMMONS, COMPLAINT, EXHIBIT.

Description of person process was left with:

Sex: **Male** - Skin: **African American** - Hair: **Black** - Age: **55-60** - Height: **6ft5in** - Weight: **260**

        I declare under penalty of perjury that the foregoing is true and correct.

        Executed on ___11/22/19___

Signed and sworn to before me on
this 22 day of November, 20 19
by an affiant who is personally known to me
or produced identification.

_____
Notary Public

**Anthonio Hightower**
MLQ an ABC Legal Company
2000 Riveredge Parkway, Suite 885
Atlanta, GA 30328
770-984-7007/800-446-8794

**Buckley Beal, LLP
HANDSFORD**



ALEXIS L FOLDS
MY COMMISSION EXPIRES
APR 7 2023
PAULDING COUNTY, GEORGIA
NOTARY PUBLIC

*679518*

2019CV04352-10
CLAYTON COUNTY, GA
11/22/2019 3:07 PM
Jacquline D. Wills
CLERK SUPERIOR COURT

IN THE SUPERIOR COURT OF CLAYTON COUNTY
STATE OF GEORGIA

**VINCENT HANDSFORD**

                    Plaintiff(s),

vs.

**Case No.: 2019CV04352-10**

**AFFIDAVIT OF SERVICE**

**CLAYTON COUNTY SHERIFF'S OFFICE, AND
CLAYTON COUNTY SHERIFF VICTOR HILL, IN HIS
OFFICIAL CAPACITY**

                    Defendant(s).

_____/

Personally appeared before me, the undersigned officer duly authorized to administer oaths, Anthonio Hightower, who, first being duly sworn, on oath deposes and states that he/she is a citizen of the United States and is 18 years of age or older and is a party having no interest in the above-styled case. Affiant further states that on **November 20, 2019** at **11:08 AM**, I served **CLAYTON COUNTY SHERIFF'S OFFICE** by personally serving **ALAN PARKER, Attorney/Counsel**, located at **9157 TARA BLVD , Jonesboro, GA 30236** with the following: SUMMONS, COMPLAINT, EXHIBIT.

Description of person process was left with:

Sex: **Male** - Skin: **African American** - Hair: **Black** - Age: **55-60** - Height: **6ft5in** - Weight: **260**

        I declare under penalty of perjury that the foregoing is true and correct.

        Executed on _____11/22/19_____

Signed and sworn to before me on
this _____ day of ___November___, 20 _19_
by an affiant who is personally known to me
or produced identification.

_____
Notary Public

**Anthonio Hightower**
MLQ an ABC Legal Company
2000 Riveredge Parkway, Suite 885
Atlanta, GA 30328
770-984-7007/800-446-8794

**Buckley Beal, LLP
HANDSFORD**



ALEXIS L FOLDS
COMMISSION EXPIRES
APR
7
2023
★
COUNTY, GEORGIA
NOTARY PUBLIC

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
**\*679513\***